IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| RICHARD E. SHREVES,<br><br>Plaintiff,<br><br>vs.<br><br>DR. SCOTT PIRANIAN, TRISTON KOHUT, LAUREL ANDRECHAK, SPECTRUM MEDICAL INC., MIKE FERRITER, MIKE BATISTA MEAGEN BOURNE, C. McGUIRE, DANIEL TROUPE, DAN CHLADEK, KRISTY BOESE, BILL MILLER, LIZ RANTZ, HEIDI ABBOTT, CATHY REDFERN, and CINDY HINER,<br><br>Defendants. | CV 14-00048-H-DLC-RKS<br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

## SYNOPSIS

Mr. Shreves alleges Defendants have been deliberately indifferent to his serious medical needs. (Complaint, Doc. 2; Amended Complaint, Doc. 11.) Mr. Shreves's allegations arising prior to July 24, 2011, are barred by the applicable statute of limitations. His remaining allegations fail to state a claim upon which relief may be granted. Given the abundance of material submitted with the Complaint, including medical and prison records, it is clear these defects cannot be cured by the allegation of additional facts. This matter should be dismissed.

1

# JURISDICTION

Mr. Shreves filed this action in federal court, in the Helena Division of the District of Montana. (Complaint, Doc. 2.) Venue is proper, as he was incarcerated in and alleges wrongs committed in Powell County, Montana. Local Rule 3.2(b)(3). The Court has personal jurisdiction over the parties, all of whom are found in Montana. Fed. R. Civ. P. 4(k)(1)(A); Mont. R. Civ. P. 4(b). Read liberally, the Amended Complaint attempts to allege a violation under 42 U.S.C. § 1983, invoking subject matter jurisdiction. 28 U.S.C. § 1331, 28 U.S.C. § 1343(a). The case was assigned to Hon. Dana Christensen, Chief United States District Court Judge, and referred to the undersigned. Local Rule 72.2(a)(1).

# STATUS

Mr. Shreves is a prisoner proceeding in forma pauperis. His Complaint must be reviewed to determine if the allegations are frivolous, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A. If so, the case must be dismissed. 28 U.S.C. §§ 1915(e)(2), 1915A(b). This is the review.

# STANDARDS

**Stating a claim**

A complaint must allege sufficient factual matter to "state a claim to relief

that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility is less than probability, but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Pleadings that are no more than conclusions are not entitled to the presumption of truth and may be disregarded. *Id.* at 679. A plaintiff must plead the essential elements of a claim to avoid dismissal for failure to state a claim. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

**Leave to amend**

Mr. Shreves, representing himself, is entitled to have his Complaint liberally construed. *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). "Unless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

Leave for Mr. Shreves to amend his complaint should be given freely "when justice so requires." Fed. R. Civ. P. 15. A district court, however, should dismiss a

3

complaint without granting leave to amend if amendments would be futile. *Klamath Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).

**Operative Complaint**

An amended complaint replaces an original complaint such that the original complaint no longer serves a function in the case. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).

**Statute of Limitations**

The applicable statute of limitations for claims filed pursuant to 42 U.S.C. § 1983 is the state statute of limitations governing personal injury actions. *Wilson v. Garcia*, 471 U.S. 261 (1985). In Montana, that period is three years after the action accrues. Mont. Code. Ann. § 27-2-204(1).

**Eighth Amendment--Denial of Medical Care**

To state an Eighth Amendment claim for denial of medical care, a plaintiff must allege specific facts that, if proved, would establish that the plaintiff had a serious medical need and the defendant showed deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX*

*Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). To state an arguable Section 1983 claim for failure to provide medical care, a prisoner must allege that a defendant's "acts or omissions [were] sufficiently harmful to evidence a deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986).

A serious medical need exists if failure to treat the condition could result in significant injury or the "unnecessary or wanton infliction of pain." *Estelle*, 429 U.S. at 104. To qualify as a deliberately indifferent response, the plaintiff must allege: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference. *Jett v. Penner*, 439 F.3d 1091, 1096.

A difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Also, "a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a[§ ]1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). To establish that such a difference of opinion amounted to deliberate indifference, the prisoner "must show that the course of

treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health." *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105–06); *see also Toguchi*, 391 F.3d at 1060.

## FACTUAL ALLEGATIONS[1]

For purposes of this review, the factual allegations in the Complaint are presumed to be true. Unsupported legal conclusions, however, are disregarded.

Mr. Shreves alleges he began suffering back pain when he injured his back while incarcerated at the Great Falls Regional Prison in May 2002. (Amended Complaint, Doc. 11 at 8.) In May 2006, he was transferred to the Montana State Prison where he is currently incarcerated. (Amended Complaint, Doc. 11 at 10.)

On July 14, 2011, x-rays were taken of Mr. Shreves's back at the Powell County Hospital. (Amended Complaint, Doc. 11 at 17; Complaint Exhibit 104, Doc. 2-8 at 1–MSP referral form for "x-ray L/S spine & SI joints reg re: low back pain"). The x-rays were interpreted by Dr. Daniel Alzhelmer who found: "Mild

---

[1] As set forth below, Mr. Shreves's claims arising before July 24, 2011, are barred by the applicable statute of limitations. The Court has therefore focused its recitation of the factual allegations on events occurring after July 24, 2011.

disc space narrowing at L4-5 and L5-S1" and "no other anomolies." (Complaint Exhibit 105, Doc. 2-8 at 2.)

On July 22, 2011, Dr. Piranian reviewed the x-ray results with Mr. Shreves. He told him physical therapy was not provided to wards of the State and nothing further would be done. (Amended Complaint, Doc. 11 at 18.) On August 25, 2011, Mr. Shreves had an outside doctor, Dr. Iverson, review his x-rays. Dr. Iverson opined:

> X-ray Interpretation of 5 views of the lumbar spine Powell County Medical Center, Deer Lodge, Montana, July 14, 2011 shows what appears to be 6 lumbar vertebral bodies. On the assumption that the lowest lumbar vertebral body is L6, there is partial sacralization of the L6 vertebral body on the left with normal configuration on the right.
>
> There appears to be some osteoarthritic involvement of the left partially sacralized area. There is a minimal scoliotic curvature noted on the AP view of the lumbar spine.
>
> X-ray interpretation SI joints Powell Community Medical Center, Deer Lodge, Montana, July 14, 2011 shows no abnormalities of the sacroiliac joints. The partial sacralization of the lowest lumbar vertebral body on the left is noted as reported in the interpretation of the lumbar spine x-rays.

(Complaint Exhibit 110, Doc. 2-8 at 7.)

Mr. Shreves provided Dr. Iverson's interpretation of his x-rays to the prison officials and asked to be rescreened by Dr. Piranian to receive some sort of pain relief. (Amended Complaint, Doc. 11 at 19.) Mr. Shreves received the following

7

response from Dr. Rantz: "The interpretation is slightly different but does not affect management. I will give Dr. Iverson's letter to Dr. Piranian." On September 14, 2011, Dr. Piranian added the notation: "Noted, & agreed with Dr. Rantz." (Complaint Exhibit 112, Doc. 2-8 at 9.)

On June 14, 2012, Mr. Shreves sent a medical request regarding a white spot in his throat. (Complaint Exhibit 113, Doc. 2-8 at 10.) On June 19, 2012, Mr. Shreves was interviewed by Dr. Kohut regarding the spot. He alleges Dr. Kohut told him, before any tests were performed, that it was "cancer . . . nothing else . . . [or] maybe H.I.V." (Amended Complaint, Doc. 11 at 20.) Dr. Kohut did a physical exam and ordered an HIV swab. Mr. Shreves was examined by an outside specialist in Missoula on August 7, 2012, and was taken for a barium swallow on November 1, 2012. (Complaint Exhibits 119-126, Docs. 2-9 at 1-8). The results of the espohogram/barium swallow were:

> There is a normal swallowing mechanism. There is no esophageal mass lesion or stricture. No esophageal diverticulum is present. There are no abnormal extrinsic impression on the esophagus. There is a small sliding hiatus hernia. Mild reflux is seen on with the water siphon test. No esophageal ulceration is present.

(Complaint Exhibit 126, Doc. 2-9 at 8.)

Dr. Kohut prescribed Reglan on January 10, 2013. (Complaint Exhibit 125, Doc. 2-9 at 7). Mr. Shreves alleges Dr. Kohut did not tell him that Reglan has

possible side effects of uncontrolled shaking and Tardive Dyskinesia. On March 19, 2013, after receiving information from his mother on the possible side effects of Reglan, Mr. Shreves stopped taking the medication. (Amended Complaint Doc. 11 at 21; Complaint Exhibit 127-A, Doc. 2-9 at 9.)

On November 19, 2013, Mr. Shreves sent a medical request to the infirmary complaining about substantial pain in his back. He again pointed out that Dr. Iverson's interpretation contradicted Dr. Alzhelmer's interpretation. Dr. Piranian responded on November 22, 2013, that, "The reading by Dr. Iverson describes a not uncommon congenital anomaly. It may be a contributing factor in causing chronic back pain, but does not change treatment options/plans." (Complaint Exhibit 130, Doc. 2-9 at 14.)

On November 28, 2013, Mr. Shreves submitted another health care request form complaining about his back problems. On December 2, 2013, Dr. Kohut responded that they would repeat the x-ray. (Amended Complaint Doc. 11 at 22; Complaint Exhibit 131, Doc. 2-9 at 15.)

X-rays were done of Mr. Shreves lumbar spine on December 3, 2013, with the following findings:

> The five views of the lumbar spine were performed and show loss of the normal lumbar lordosis, compatible with spasm. There is nonfusion of the ringed apophysis anterosuperiorly at L3. There is

disc space narrowing at L4-5 and L5-S1.

.(Complaint Exhibit 135, Doc. 2-9 at 19.) No physical exam was conducted from November 19, 2013, until December 26, 2013. (Amended Complaint, Doc. 11 at 22.)

Mr. Shreves sent another medical request complaining of his back symptoms on January 3, 2014. He was screened by a nurse on January 4, 2014, but she asked him no questions and told him he had been assessed for this problem and he would have a clinic appointment shortly. (Amended Complaint Doc. 11 at 24; Complaint Exhibit 137, Doc. 2-9 at 21.)

Dr. Kohut performed a physical exam and interview of Mr. Shreves on January 6, 2014. Dr. Kohut told Mr. Shreves at least three times that he had back pain. He recommended "activity . . . and O.T.C. medications" and ordered a follow-up in 5-6 weeks. (Amended Complaint Doc. 11 at 24-25.)

On January 18, 2014, Mr. Shreves began experiencing diarrhea eight to ten times a day. He saw a physician's assistant on January 27, 2014 for these problems. He believes the bowel problems and loss of control were caused by his untreated back pain and twitching spasms. (Amended Complaint Doc. 11 at 26.) He had these troubles for approximately eight to ten days. (Amended Complaint Doc. 11 at 28.)

10

Mr. Shreves's back problems continued to cause him pain, and he sent another medical request on January 30, 2014. He was assessed by a nurse on February 1, 2014, who referred him to a provider. (Amended Complaint Doc. 11 at 26.) Mr. Shreves met with Dr. Piranian on February 19, 2014, to discuss his back pain and high blood pressure. He explained that he had taken about 2000 mg of Ibuprofen a day from December 20, 2013, until January 4, 2014, which made the pain tolerable. He was concerned about taking too much Ibuprofen because of his acid reflux problem. (Amended Complaint Doc. 11 at 27.) He alleges Dr. Piranian did not give him adequate responses to his questions.

X-rays were taken again on March 4, 2014, which indicated "mild disc space narrowing is present involving T5 through T8, with mild spondylosis. There is no fracture." (Complaint Exhibit 152, Doc. 2-9 at 36.)

On March 11, 2014, Mr. Shreves followed up with Dr. Piranian about the thoracic x-rays. Dr. Piranian did not provide him with any details about spondylosis or why the x-ray mentioned no fracture. Dr. Piranian refused to refer Mr. Shreves to a specialist and labeled any further action as elective. (Amended Complaint, Doc. 11 at 30-32.)

On June 5, 2014, Mr. Shreves attempted to lift weights for the first time since December 22, 2013. Prior to December 22, 2013, he would lift weights four

or five times per week for 45 minutes per day. On June 26, 2014, Mr. Shreves sent a medical request to the infirmary. He was assessed on June 27, 2014 by Leslie Thornton, who instructed Mr. Shreves to stay out of the gym. (Amended Complaint Doc. 11 at 32-33.)

On July 1, 2014, Dr. Kohut performed a physical exam on Mr. Shreves. He told Mr. Shreves that nothing could be done for the fractured/nonfused ringed apophysis and that it was most likely congenital. Dr. Kohut ordered 400 mg of Ibuprofen, three times a day, as needed indefinitely. (Amended Complaint Doc. 11 at 33.)

## ANALYSIS

### Defendants not mentioned

Mr. Shreves filed his First Amended Complaint on September 29, 2014. (Doc. 11.) Since an amended complaint replaces the original complaint, the Amended Complaint is the operative complaint in this analysis. *Ferdik*, 963 F.2d at 1262. Mr. Shreves did not list Spectrum Medical, Inc., Meagen Bourne, C. McGuire, Kristy Boese, or Heidi Abbott as Defendants in his Amended Complaint. The claims against these Defendants should be dismissed.

### Statute of Limitations

Mr. Shreves signed and dated his original Complaint on July 24, 2014.

(Complaint, Doc. 2 at 68.)  Accordingly, any and all claims arising prior to July 24, 2011, are barred by the applicable statute of limitations.  *Wilson*, 471 U.S. 261; Mont. Code. Ann. § 27-2-204(1).  This includes all claims arising at Great Falls Regional Prison and all claims against Defendants Andrechak, Troupe, Chladek, and Miller.  All claims arising prior to July 24, 2014, and Defendants Andrechak, Troupe, Chladek, and Miller are barred by the applicable statute of limitations.

**Eighth Amendment Denial of Medical Care**

Even assuming, for purposes of these recommendations, that Mr. Shreves was suffering from serious medical needs, his claims fail as a matter of law because he failed to allege sufficient facts demonstrating that Defendants were deliberately indifferent to those needs.

**Back Problems**

Mr. Shreves alleges Defendants have been deliberately indifferent because they have not done enough to diagnosis and treat his back condition.  Mr. Shreves's Complaint, Amended Complaint, and the records attached to his Complaint, however, clearly demonstrate that Mr. Shreves has been receiving attentive medical care at the prison.  Mr. Shreves fails to allege anything more than a difference of opinion regarding the diagnosis and treatment of his back condition.

Mr. Shreves presented an abundance of material with his Complaint. Those records, however, do not demonstrate a conscious disregard for Mr. Shreves's back problems. Although Defendants have not referred Mr. Shreves to a back specialist, they have not ignored his medical condition. The prison ordered x-rays done on Mr. Shreves's spine in July 2011. Two doctors had different interpretations of those x-rays, but the two prison doctors who reviewed Mr. Shreves's records agreed that the different interpretations did not change the treatment plan.

Mr. Shreves does not allege that he made any complaints regarding his back between September 2011 and November 2013. In addition, he admits that up until December 2013, he was lifting weights four to five times a week. Between December 2013 and July 2014, he received two sets of x-rays and was seen on at least eight different occasions for treatment of his medical issues. Three of those visits were sit-down discussions with prison doctors regarding the treatment plan for his back condition. The fact that the doctors have determined to treat his back problems conservatively does not establish a constitutional violation.

Mr. Shreves may disagree with medical care he received for his back but he had not alleged sufficient facts to establish deliberate indifference to his medical needs. Even if Defendants' chosen course of treatment does not work, it is insufficient to allege a denial of medical care claim under the Eighth Amendment.

**Throat Disorder**

Mr. Shreves also alleges Dr. Kohut actions were imprudent and reckless when he told Mr. Shreves the ulcer in his throat was cancer. In light of the medical records produced by Mr. Shreves and the actions taken to diagnose this issue, Dr. Kohut's actions cannot be considered deliberately indifferent. In fact, it appears that a number of tests, including examination by two doctors outside of the prison, were done to rule out cancer.

Mr. Shreves also takes issue with Dr. Kohut prescribing a medication that Mr. Shreves eventually refused to take because of potential side effects. Mr. Shreves was only on this medication for approximately two months and alleges no long term consequences as a result of taking the drug. Mr. Shreves allegations regarding Dr. Kohut's treatment of the ulcer and the prescription of a drug to treat his reflux problems are insufficient to state a claim for deliberate indifference.

**State Law Claims**

To the extent Mr. Shreves seeks to pursue Montana state law claims, the Court should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) (district court may decline supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction"). Mr. Shreves can attempt to bring these claims in state court if he chooses.

**CONCLUSION**

Mr. Shreves has failed to state a claim upon which relief may be granted. These are not defects which could be cured by the allegation of additional facts. This matter should be dismissed.

**"Strike" under 28 U.S.C. § 1915(g)**

The Prison Litigation Reform Act prohibits prisoners from bringing forma pauperis civil actions if the prisoner has brought three or more actions in federal court that were dismissed for frivolousness, maliciousness, or for failure to state a claim. 28 U.S.C. § 1915(g). Because Mr. Shreves failed to state a claim, the dismissal of this matter should be a strike under 28 U.S.C. §1915(g).

**Certification Regarding Appeal**

The Federal Rules of Appellate Procedure provide as follows:

[A] party who was permitted to proceed in forma pauperis in the district-court action, or who was determined to be financially unable to obtain an adequate defense in a criminal case, may proceed on appeal in forma pauperis without further authorization, unless:
(A) the district court-before or after the notice of appeal is filed-certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis and states in writing its reasons for the certification or finding;

Fed.R.App.P. 24(a)(3)(A).

Analogously, 28 U.S.C. § 1915(a)(3) provides "[a]n appeal may not be taken

in forma pauperis if the trial court certifies in writing that it is not taken in good faith." The good faith standard is an objective one. *See Coppedge v. United States*, 369 U.S. 438, 445 (1962). A plaintiff satisfies the "good faith" requirement if he or she seeks review of any issue that is "not frivolous." *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir. 1977) (*quoting Coppedge*, 369 U.S. at 445). For purposes of Section 1915, an appeal is frivolous if it lacks any arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 327 (1989); *Franklin v. Murphy*, 745 F.2d 1221, 1225 (9th Cir. 1984).

The record makes plain the instant Complaint is frivolous as it lacks arguable substance in law or fact. As such, no reasonable person could suppose an appeal would have merit. The Court should certify that any appeal of this matter would not be taken in good faith.

**Address Changes**

At all times during the pendency of this action, Mr. Shreves must immediately advise the Court of any change of address and its effective date. Failure to file a notice of change of address may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

It is **RECOMMENDED:**

1. This matter should be dismissed.

2. The Clerk of Court should be directed to close this matter and enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

3. The Clerk of Court should be directed to have the docket reflect that this dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g). Mr. Shreves failed to state a claim upon which relief may be granted.

4. The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Fed.R.App.P. 24(a)(3)(A) that any appeal of this decision would not be taken in good faith. The record makes plain the instant Complaint is frivolous as it lacks arguable substance in law or fact.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT**

Mr. Shreves may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[2] 28 U.S.C. § 636. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed

---

[2]As this deadline allows a party to act after the Findings and Recommendations is "served," it falls under Fed.R.Civ.P. 6(d). Therefore, three (3) days are added after the period would otherwise expire.

until entry of the District Court's final judgment.

DATED this 8th day of December, 2014.

    /s/ Keith Strong
Keith Strong
United States Magistrate Judge